**RAPID SETTLEMENTS, LTD., Appellant**

v.

**SYMETRA LIFE INSURANCE COMPANY and Symetra National Life Insurance Company and Abigail Dempsey, Appellees.**

No. 12–07–00008–CV.

Court of Appeals of Texas, Tyler.

Aug. 31, 2007.

Harry J. Fleming and Susan F. Hatcher, Houston, for Appellant.

Jeff D. Lefkowitz, for Appellees.

Abigail Dempsey, pro se.

Panel consisted of GRIFFITH, J., HOYLE, J., and BASS, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

## OPINION

BILL BASS, Justice.

Rapid Settlements, Ltd. appeals the trial court's order granting a temporary injunction. The order enjoins Rapid from seeking to confirm, enforcing, or compelling performance of an arbitration award transferring to Rapid, pursuant to a transfer agreement, structured settlement payments to be received by Abigail Dempsey. Because we conclude the trial court did not abuse its discretion in granting the temporary injunction, we affirm the trial court's order.

### BACKGROUND AND PROCEDURAL HISTORY

Symetra Life Insurance Company issued an annuity to fund a structured settlement concluding litigation arising out of Dempsey's claim of an on the job injury at a Texas nursing home. In addition to a lump sum payment, the settlement guaranteed Dempsey monthly payments of $850.00 for twenty years, the last guaranteed payment due October 25, 2010. Thereafter, the monthly payments were life contingent, that is they were payable to Dempsey but not to her estate or heirs if she died after October 25, 2010. In January 2003, the 145th Judicial District Court of Nacogdoches County approved Dempsey's transfer of her remaining $78,200.00 in guaranteed monthly payments in exchange for $40,000.00.

On March 28, 2005, Dempsey signed a transfer agreement in which she agreed to assign to Rapid 120 monthly payments of $800.00 out of the $850.00 monthly payment beginning on November 25, 2010 through and including October 25, 2020. The agreement provided, as follows: "This transfer agreement is subject to court approval. A court must approve assignor's [Dempsey's] sale, assignment and transfer to Rapid Settlements of the Assigned Payments before such payments can be trans-

ferred and the Assignment Price ... paid to Assignor." However, under the agreement, Dempsey granted to Rapid a security interest in all the assigned payments, *"regardless of whether such transfer and assignment is consummated,"* "to secure payment of the assigned payments to Rapid Settlements and assignor's other obligations hereunder." Of particular significance in this case, the transfer agreement contained an arbitration clause providing that any dispute of any nature under the agreement was to be resolved through arbitration, and the arbitrator's decision would be final, binding, and nonappealable.

As required by Texas Civil Practice and Remedies Code section 141.006, in May 2005, Rapid applied to the trial court for approval of the transfer of the periodic payments. The agreement and the accompanying disclosure statement revealed that in exchange for the transfer of 120 payments totaling $96,000.00 and having a present value of $64,916.00, Dempsey was to receive $9,000.00 ($14,000.00 less $5,000.00 for Rapid's attorney's fees). Symetra opposed the transfer.

The trial court conducted a hearing on Rapid's application for approval of the transfer agreement. Both Dempsey and her husband testified in support of the agreement. Both told the court that they were aware of the disparity between the $9,000.00 they were to receive and the $64,916.00 present value [1] of the 120 payments they were to transfer to Rapid. They testified that their nine year old grandson who lived with them suffered from hydro exothermal dysplasia, that is, he had no sweat glands. They wanted to buy him a special cooling jacket costing between $1,500.00 and $3,000.00 so he could play outside like other boys. The rest of the money they intended to use to fix up a nice inside bathroom for him. In response to the court's questions, they said they could not obtain the money from any other source, and that they realized their grandson would outgrow the special cooling jacket within two years.

Unsurprisingly, the trial court denied approval of the transfer finding that Rapid had not shown that the transfer was in the best interest of the payee (Dempsey), as required by Texas Civil Practice and Remedies Code section 141.004. The trial court further found that the transfer would contravene section 141.007(b) providing that any claim that the payee had breached the agreement shall be determined in and under the laws of this state, and also providing that the transfer agreement may not authorize the transferee or any other party to confess judgment or consent to the entry of judgment against the payee. The trial court further found that the transfer agreement contravened section 141.007(c), which prohibits the transfer of life-contingent payments

> unless, prior to the date on which the payee signs the transfer agreement, the transferee has established and agreed to maintain procedures reasonably satisfactory to the structured settlement obligor and the annuity issuer for: (1) periodically confirming the payee's survival; and (2) giving the structured settlement obligor and the annuity issuer prompt written notice in the event of the payee's death.

---

1. Texas Civil Practice and Remedies Code section 141.003 mandates that the transferee provide the payee a disclosure statement that states "the discounted present value of the payments to be transferred, which shall be identified as the 'calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities,' and the amount of the Applicable Federal Rate used in calculating the discounted present value; ..." TEX. CIV. PRAC. & REM. CODE ANN. § 141.003(3) (Vernon 2005).

The court signed its order denying approval of the transfer on July 17, 2005.

On July 19, 2005, two days after the trial court denied approval of the transfer, Dempsey signed a promissory note promising to pay Rapid $1,000.00 due September 2, 2005, "or earlier upon approval of the Transfer Agreement ... by a court or in arbitration proceedings." The note recites that it was for advances made to Dempsey against the payment of the assignment price under the transfer agreement, and that it was secured by the transfer agreement. The note also provided that any dispute arising out of a breach of this note or any of the other loan documents shall be resolved by arbitration, the single arbitrator's decision to be final, binding, and nonappealable.[2]

Wasting no time, Rapid submitted its demand for arbitration on August 13, 2005 reciting that Dempsey was a party to the Transfer Agreement, which provided for arbitration, and demanding arbitration of a dispute involving damages related to Dempsey's breach of the Transfer Agreement. Rapid also alleged that it had advanced Dempsey $2,000.00 pending completion of the transfer, but that Dempsey had breached the contract "by not completing actions required by the court considering approval." It alleged that Dempsey obtained the $2,000.00 under false pretenses in an attempt to commit fraud on Rapid. The arbitrator scheduled a hearing and sent notice thereof to the interested parties including Symetra. Symetra did not participate in the arbitration proceedings.

After a telephone conference with Dempsey, the arbitrator entered an award based on agreed findings. The award stated the arbitrator's jurisdiction "derived from the contractual agreement of the parties as set forth in the transfer agreement." The arbitrator further concluded that he had "authority to enter an award based upon the garnishment of the res, here being the assigned payments." "Further, the arbitrator [found] that Symetra's position is in the nature of a stakeholder similar to that in an interpleader action." Based on agreed findings, the arbitrator found the transfer agreement was valid, binding, and enforceable, that "Dempsey breached the promissory note with Rapid, and that in satisfaction thereof the parties have agreed to a complete transfer pursuant to the [Texas Structured Settlement Protection] Act."

The arbitrator then ordered the transfer to Rapid of the same 120 monthly payments of $800.00 for the same consideration, $14,000.00 less $5,000.00, specified in the transfer agreement whose approval had been rejected by the trial court in its July 17, 2006 order. The arbitrator found that the transfer represented the fair market value of the payments, that the transfer was in Dempsey's best interests, that she had no dependents, and that the money was to be used for home repairs. The award also ordered Symetra to pay Rapid the payments whose transfer had been denied by the trial court.

On October 31, 2005, Rapid filed its petition for confirmation of the award in the County Court at Law No. 3 in Harris County. Symetra successfully sought to abate the Harris County proceeding urging the prior consideration of the matter by the 145th District Court of Nacogdoches County, the trial court herein, and that under the Texas Structured Settlement Protection Act (SSPA), jurisdiction and venue were in Nacogdoches County where Dempsey resides. The Harris

---

**2.** On June 2, 2005, Dempsey had signed another note for $1,000.00 payable to Rapid secured by the Transfer Agreement. This note did not provide for arbitration.

County court abated the Harris County case on November 29, 2006.

Symetra then filed its petition in the trial court asking for injunctive relief to prevent Rapid and Dempsey from seeking to enforce or confirm the arbitration award. Symetra also asked the court to declare the arbitration provision in the Transfer Agreement invalid because Rapid had not obtained the proper court's approval of the proposed transfer and because the arbitration provision was an attempt to evade the safeguards provided by the SSPA and was unconscionable.

On December 14, 2006, Rapid filed in the trial court its Application for Confirmation of the Arbitration Award.

On December 19, 2006, the trial court signed a temporary injunction ordering Rapid and Dempsey

> not to do anything directly or indirectly, in Harris County or anywhere else other than in this Court, to seek to confirm, enforce or compel performance under the Arbitration Award including but not limited to by pursuing or taking any action in Cause No. 850538 in County Court at Law No. 3, Harris County, Texas or any appeal or mandamus therefrom from the date of this Order until judgment in this Cause is rendered by this Court.

Rapid contends (1) that the trial court no longer had jurisdiction to issue the injunction, (2) that the anti—suit injunction was improper, (3) that the Federal Arbitration Act preempts the Texas Structured Settlement Protection Act, (4) that the arbitration award is valid because it arose out of a valid agreement to arbitrate contained in the transfer agreement and the July 19, 2005 promissory note, and (5) that Symetra has not shown a probable right to recover or irreparable injury.

## JURISDICTION

■ Rapid first insists that the trial court lacked jurisdiction when it issued its temporary injunction, because its plenary power had expired thirty days after its order refusing to approve the transfer agreement.

■ "A trial court has the power to enforce its judgments even after its plenary power has expired." *Wall St. Deli, Inc. v. Boston Old Colony Ins. Co.*, 110 S.W.3d 67, 69 (Tex.App.-Eastland 2003, no pet.) (citing *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex.1982)). "That power is part of the court's jurisdiction, and the court may employ suitable methods to enforce its jurisdiction." *Arndt*, 633 S.W.2d at 499. A court may enjoin proceedings in other courts when their prosecution will delay, obstruct, or otherwise interfere with the proper enforcement of its judgment. *Hunt Prod. Co. v. Burrage*, 104 S.W.2d 84, 87–88 (Tex.Civ.App.-Dallas 1937, writ dism'd w.o.j.) Consequently, the Dallas Court of Appeals granted an anti-suit injunction almost four years after judgment. In another case, the court of appeals held that the trial court did not abuse its discretion in granting an anti-suit injunction more than six months after its plenary power had expired. *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 889, 893 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd w.o.j.).

In this case, the trial court issued the temporary injunction seventeen months after it signed the order denying approval of the transfer. Although its plenary power had expired, the trial court still retained power to enjoin interference with its order. *See Arndt*, 633 S.W.2d at 499.

## ANTI-SUIT INJUNCTIONS

■ Rapid next contends the trial court erred in enjoining it from proceeding in other courts to confirm, enforce, or compel

performance under the arbitration agreement, because none of the four situations justifying such action are present in the instant case. Rapid maintains that its petition for confirmation of the arbitration award in the Harris County court is not the result of the trial court's denial of the transfer of the structured settlement payments, but rather the result of the arbitration and award arising from Dempsey's breach of contract. Citing *Armstrong v. Steppes Apartments, Ltd.,* 57 S.W.3d 37, 49–50 (Tex.App.-Fort Worth 2001, pet. denied), Rapid also points out that when an action can be filed in either of two courts, the "first court acquiring jurisdiction will retain jurisdiction." Since Rapid first sought to confirm the award in Harris County, it argues that it is the Harris County court that has jurisdiction. We disagree.

■ Subject to a showing by the party seeking the injunction that clear equity demands it, an anti-suit injunction is proper in four instances: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of lawsuits; or (4) to protect a party from vexatious or harassing litigation. *Gonzalez v. Reliant Energy, Inc.,* 159 S.W.3d 615, 623 (Tex.2005). At least two of the four circumstances in which an anti-suit injunction is warranted are present here.

First, the confirmation in Harris County of an arbitration award that transfers Dempsey's structured settlement payment rights in defiance of the order denying that transfer by the trial court would render the judgment of the trial court a nullity. The trial court possessed the inherent power to enjoin another proceeding whose prosecution would obstruct or interfere with the proper enforcement of its judgment. *Arndt,* 633 S.W.2d at 499. Second, we share the trial court's view that the

injunction was necessary to prevent Rapid's evasion of an important public policy declared by the legislature in the SSPA, Tex. Civ. Prac. & Rem.Code Ann. §§ 141.001–.007 (Vernon 2005), whose passage was prompted by the abuses illustrated by the facts of this case. Rapid endeavored through arbitration to effect a transfer of Dempsey's payment rights based upon purported security agreements taken in contravention of the statute and despite the trial court's denial of approval. Its conduct is clearly an attempted evasion of the SSPA and the policy that impelled its adoption. Because either of these circumstances warrant an anti-suit injunction, Rapid's argument to the contrary is without merit.

### FEDERAL PREEMPTION

■ Rapid contends that the SSPA does not apply to this case because it is preempted by the Federal Arbitration Act (FAA). The FAA preempts state statutes if (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects the enforceability of the agreement. 9 U.S.C.A. § 1–16; *In re Rapid Settlements, Ltd.,* 202 S.W.3d 456, 459 (Tex.App.-Beaumont 2006, orig. proceeding) (citing *In Re Nexion Health at Humble, Inc.* 173 S.W.3d 67, 69 (Tex.2005) (orig.proceeding)). The FAA permits state law to be applied if the law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987). However, courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). In *Casarotto,* the

court held the FAA preempted a state statute regulating arbitration clauses in franchise agreements. *Id.,* 517 U.S. at 688, 116 S.Ct. 1652, 1657. In another Supreme Court case, the Court held the FAA preempted an Alabama statute prohibiting predispute arbitration agreements. *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995).

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revision of *any* contract." 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent.

*Id.*

In *In re Rapid Settlements,* the Beaumont court of appeals examined the content of the SSPA in detail and concluded that none of its provisions addressed or precluded the arbitration of a breach of the transfer agreement. *See In re Rapid Settlements,* 202 S.W.3d at 460. Specifically, the court reasoned that

> [n]one of the court findings required by section 141.004 prohibits the creation of arbitration rights in a transfer agreement.... Moreover, the SSPA does not explicitly address the issue of arbitrability of structured settlement transfer contracts. Nothing in the statute prohibits parties from including an arbitration provision in the transfer agreement.... Section 141.004 of the SSPA requires prior court approval of the transfer

agreement, not the arbitration clause....

*Id.* Finding no conflict between the FAA and the SSPA, the court held the FAA did not preempt SSPA. *Id.* We agree with the analysis and holding of the Beaumont court. The FAA does not preempt the SSPA.

Having addressed Rapid's preliminary issues, we now consider whether Symetra made the required showing to support the trial court's order granting the temporary injunction.

### TEMPORARY INJUNCTIONS

 An applicant for a temporary injunction must plead and prove (1) a cause of action against the defendant, (2) a probable right to recovery, and (3) a probable, imminent, and irreparable injury in the interim. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). A "probable right to recovery" requires only that the appellee show "that a bona fide issue exists as to his right to ultimate relief." *183/620 Group Joint Venture v. SPF Joint Venture,* 765 S.W.2d 901, 904 (Tex.App.-Austin 1989, writ dism'd w.o.j.).

### Standard of Review

 The decision to grant or deny a temporary writ of injunction lies within the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of discretion. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). In reviewing a decision to grant or deny a request for a temporary injunction, an appellate court views "the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine[s] whether the order was so arbitrary that it exceeds the bounds of reasonable discretion." *IAC, Ltd. v. Bell Helicopter Textron, Inc.,* 160

S.W.3d 191, 196 (Tex.App.-Fort Worth 2005, no pet.). A trial court does not abuse its discretion in determining whether to issue a temporary injunction where there is "some evidence to support the trial court's decision." *Id.* The standard of appellate review does not change merely because the injunction precludes a party from proceeding in another lawsuit. *Forum Ins. Co. v. Bristol–Myers Squibb Co.*, 929 S.W.2d 114, 117 (Tex.App.-Beaumont 1996, writ denied).

## ARBITRATION

■■■■■ "A nonsignatory cannot be bound to arbitrate unless it is bound 'under traditional principles of contract and agency law' to be akin to a signatory of the underlying agreement." *E.I. DuPont de Nemours & Co., v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir.2001). For example, courts have been willing to apply third party beneficiary law to bind nonsignatories. *Id.* at 194–95. Courts have also used the following theories to bind nonsignatories to arbitration agreements: 1) incorporation by reference, 2) assumption, 3) agency, 4) veil piercing/alter ego, and 5) estoppel. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir.2005). Whether the dispute in question falls within the scope of the arbitration agreement and whether a statute or policy renders a claim nonarbitrable are generally threshold questions for a court to decide. *See e.g. Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir.2003).

■■■■■ An award resulting from the arbitration agreement of the parties to a dispute shall be confirmed by the court unless the narrow grounds for vacating or modifying it are met. *See* 9 U.S.C.A. §§ 9, 10, 11; *see also* TEX. CIV. PRAC. & REM.CODE §§ 171.087, 171.088, 171.091 (Vernon 2005). The failure of an arbitrator to correctly

apply the law is not a basis for setting aside an arbitrator's award. *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 356 (5th Cir.2004). Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. *Major League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001). Even if the court is convinced that the arbitrator committed serious error, that will not suffice to overturn his decision. *Id.* The narrowness of judicial review of arbitration awards is described as "among the narrowest known to the law." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995).

## THE TEXAS STRUCTURED SETTLEMENT PROTECTION ACT

The increasing use of negotiated structured settlements in personal injury cases gave rise to a secondary market for the right to receive the former tort claimant's future periodic payments. In this market, the payees who are receiving structured settlement payments transfer some or all of their right to receive future payments to a "factoring company" for a discounted present lump sum payment. The disparity in information, resources, and sophistication between the factoring companies and the former tort claimant payees too often resulted in the payees, without good reason or sufficient regard for their future needs, exchanging a future income stream on which they relied for an unfairly small present lump sum payment. Predatory tactics were sometimes employed by factoring companies both to induce and effect transfers manifestly unfair to the payees. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H–05–3167, 2007 WL 114497 at *24 (S.D.Tex. Jan. 10, 2007). In response to these abuses, the Texas Legis-

lature enacted the SSPA. TEX. CIV. PRAC. & REM.CODE ANN. §§ 141.001–.007. At least forty-two other states have adopted similar statutes. *Symetra Life Ins. Co.*, 2007 WL 114497 at *24.

The acts typically require advance disclosures to the payee including the present value of the payments to be transferred and the applicable federal rate used in calculating the discounted present value. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 141.003(3). Any transfer by the payee must be approved by the court that approved or authorized the structured settlement, or, if that court no longer has jurisdiction, by the statutory county court, the statutory probate court, or a district court located in the county where the payee resides. TEX. CIV. PRAC. & REM.CODE ANN. §§ 141.004, 141.002(2) (Vernon 2005). Section 141.004 reads as follows:

No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order based on express findings by the court that:

(1) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;

(2) the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and

(3) the transfer does not contravene any applicable statute or an order of

any court or other governmental authority.

TEX. CIV. PRAC. & REM.CODE ANN. § 141.004. The SSPA broadly defines transfers.

"Transfer" means any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration, except that the term does not include the creation or perfection of a security interest in structured settlement payment rights under a blanket security agreement entered into with an insured depository institution, in the absence of any action to redirect the structured settlement payments to the insured depository institution, or its agent or successor in interest, or to enforce the blanket security interest against the structured settlement payment rights.

TEX. CIV. PRAC. & REM.CODE ANN. § 141.002(18) (Vernon 2005). The provisions of the SSPA may not be waived by the payee. TEX. CIV. PRAC. & REM.CODE ANN. § 141.007(a) (Vernon 2005).

### PROBABLE RIGHT OF RECOVERY

■ A temporary injunction may not issue unless the petitioner can show a probable right of recovery. *Butnaru*, 84 S.W.3d at 204. This requires that on appeal Symetra show "that a bona fide issue exists as to its ultimate right to relief." *183/620 Group Joint Venture*, 765 S.W.2d at 904.

■ Rapid argues that the definition of transfer in the SSPA does not encompass arbitrations and court proceedings. Therefore, it argues that the SSPA does not apply to its transaction with Dempsey. Rapid maintains that, even if the security interest Dempsey granted in the rejected transfer agreement is ineffective, it has a separate and independent claim in arbitration and for garnishment of Dempsey's

monthly payments based upon Dempsey's failure to repay the two $1,000.00 promissory notes. The second promissory note, which Dempsey signed two days after the Nacogdoches court denied its approval of the transfer, contained an arbitration clause and granted Rapid a security interest in Dempsey's payments (described by reference to the transfer agreement). Rapid filed its demand in arbitration less than thirty days after Dempsey signed the second note and less than thirty days after the court denied approval of her transfer of the payments. It claims that its petition in arbitration was not for transfer of Dempsey's structured settlement payment rights. Rapid insists it was simply for breach of contract and "the garnishment or assignments of her payments only the remedy." Rapid maintains the arbitration agreements contained in both the transfer agreement and the second promissory note are valid and enforceable. According to Rapid, the petition for confirmation of the arbitrator's award is the result of the arbitration and the subsequent arbitration award of Dempsey's breach of contract. The matters are separate and distinct. Therefore, it was inappropriate for the Nacogdoches court to enjoin the Harris County court from proceeding to confirm the award properly before it and outside the jurisdiction of the Nacogdoches County court.

Without the Nacogdoches court's injunction, the confirmation of the arbitrator's award would have been almost a foregone conclusion. Once confirmed, it would have been nearly impervious to judicial review despite the arbitrator's errors of fact, or misapplication of the law. If Rapid's position is correct, the SSPA provides little or no protection for the payee against the predatory factoring company. It need only include an arbitration clause and a grant of a security interest in the payments in its form transfer agreement. If

the required approval is rejected by the court designated in the SSPA, it may, upon the flimsiest of pretexts, proceed to successfully relitigate the matter to an "agreed award" before its arbitrator, confident that there can be almost no review of the merits of the arbitrator's award, his mistakes of fact, or his misapplication of the law.

We are not persuaded that the provisions of the SSPA can be so easily circumvented or its purpose frustrated by so transparent a stratagem. True, there is no prohibition of an arbitration provision in a transfer agreement. But the scope of an arbitration agreement and the arbitrability of the dispute in question are for a court to decide. *Will–Drill Res., Inc.,* 352 F.3d at 214. And its scope cannot extend to what the law forbids. The scope of an arbitration agreement cannot comprehend an agreement to arbitrate to an award the substantive law clearly prohibits—in this instance, a transfer of structured settlement payment rights without court approval. The SSPA and the policy underlying it render Rapid's claim nonarbitrable.

The creation of a security interest in structured settlement payments that was attempted in this case is clearly a transfer as defined by section 141.002(18) of the SSPA. The transfer cannot be effective without final approval by the Nacogdoches court based on express findings. The transfer agreement between Dempsey and Rapid recites that Dempsey "grants, assigns, conveys, mortgages, pledges, hypothecates and transfers" a security interest in all the assigned payments "regardless of whether such transfer and assignment is consummated." The transfer agreement containing this proviso was expressly rejected by the court. Two days after the court's rejection of the transfer agreement, Dempsey

signed a $1,000.00 note containing an arbitration clause and reciting that payment was secured by the security interest in the transfer agreement. It was on this security agreement that the arbitrator relied to garnish Dempsey's structured settlement payment rights and transfer them to Rapid, effecting the identical transfer rejected three months earlier by the proper court as against Dempsey's best interest.

 "Obtaining confirmation of an arbitration award in state court clearly does not equate to the statutorily required court approval of the proposed transfer." *Symetra Life Insurance Co.*, 2007 WL 114497 at *22. An arbitration award and final judgment confirming that award cannot substitute for the court approval of a transfer required by the SSPA. Neither the security interest granted in the transfer agreement or in the note were effective without the approval of the court designated by statute. Rapid's attempt to effect a transfer in defiance of the order of the Nacogdoches court constituted a violation of the substantive law, which the court had the duty to enjoin.[3]

The legality of Rapid's scheme of using arbitration to effect a transfer of structured settlement payments without approval by the proper court has been litigated in other forums. In *Symetra Life Insurance Co.*, 2007 WL 114497 and *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, No. 06–4989, 2007 WL 1377667 (E.D.Pa. May 8, 2007), Rapid argued, as it does here, that the damages it sought in arbitration were for breach of contract and the arbitration's purpose was not to accomplish the transfer. As in this case, Rapid insisted that an appropriate remedy for the breach of contract includes a garnishment or turnover of an annuitant's periodic payments or their assignment. But the arbitrator's award effectuated the exact transfer denied by the statutorily mandated court. In *Allstate*, the court held that the findings and orders of the arbitrator were "outside of his powers and cannot be enforced against Allstate [the annuity issuer] because they ignore the [Pennsylvania] Protection Act's court approval requirement that must be satisfied before any transfer of structured settlement payments are paid." *Allstate Settlement Corp.*, 2007 WL 1377667 at *5. In *Symetra Life Ins. Co.*, 2007 WL 114497, the court concluded that "by using arbitration and subsequent state-court confirmation proceedings to effect the transfer to Rapid Settlements of Symetra annuitants' future-payment rights, in the absence of state-court approvals under applicable state structured settlement protection acts, Rapid Settlements is violating those acts." *Id.*, at *22. The Fourteenth Court of Appeals recently held in a case involving a Georgia annuitant that "Rapid cannot accomplish in arbitration that which a Georgia court has already refused to allow as contrary to Mr. King's best interests." *In Re Rapid Settlements, Ltd.*, No. 14–06–00698–CV, 2007 WL 925698, at *4 (Tex.App.-Houston [14th Dist.] Mar. 29, 2007, orig. proceeding).

The arbitration award requires Symetra to pay Dempsey's payments to Rapid. Symetra was not a party to the transfer agreement or the note. It did not partici-

---

3. "The laws in support of a general public policy and in enforcement of public morality cannot be set aside by arbitration, and neither will persons with a claim forbidden by laws be permitted to enforce it through the transforming process of arbitration." *Smith v.* *Gladney*, 128 Tex. 354, 98 S.W.2d 351, 352 (1936). The mere submission of an illegal matter to arbitrators and reducing to an award does not purge it of its illegality. *Id.*, 128 Tex. at 356, 98 S.W.2d at 352.

pate in the arbitration proceeding. None of the theories traditionally used to bind nonsignatories to arbitration agreements are applicable here. Moreover, the arbitrator's award is in direct conflict with the SSPA, which provides that "no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 141.004. Therefore, Symetra has demonstrated that it is not bound by the arbitrator's award. This shows Symetra's probable right to recovery.

### PROBABLE IRREPARABLE INJURY

■ The trial court stated that without injunctive relief, Rapid would seek confirmation of the arbitration award in the Harris County court causing Symetra irreparable harm by forcing it to litigate in an improper forum and to incur unnecessary attorney's fees. We agree. Moreover, Dempsey cannot waive the provisions of the SSPA. TEX. CIV. PRAC. & REM.CODE ANN. § 141.007(a). If Rapid proceeded to obtain confirmation of the arbitrator's award in Harris county, Symetra would be exposed to the risk of being required to pay Rapid based on the arbitration award, while remaining liable to pay Dempsey because the transfer was not approved as required by the SSPA. The alternative of compliance with the arbitration award or the requirements of the statute would expose Symetra "to significant uncertainty as to whom it must pay and a significant risk of double liability." *Symetra Life Ins. Co.*, 2007 WL 114497 at 35. This is sufficient to show Symetra's probable irreparable injury.

### CONCLUSION

The trial court had jurisdiction to issue the temporary injunction, and an anti-suit injunction was warranted to protect its jurisdiction and to prevent a violation of the law. The Federal Arbitration Act does not preempt the Texas Structured Settlement Protection Act. Symetra has demonstrated a probable right of recovery. Symetra has also shown that without injunctive relief it would suffer probable irreparable injury.

The trial court did not abuse its discretion in issuing the temporary injunction. The order is *affirmed.*