# NO. 12-19-00300-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:  JOHN DOGGETT, M.D.,* | *§* | |
| *INDEPENDENT EXECUTOR OF THE* | | |
| *ESTATE OF JERRY LLOYD* | *§* | *ORIGINAL PROCEEDING* |
| *DOGGETT,* | | |
| *RELATOR* | *§* | |

## *MEMORANDUM OPINION*

John Doggett, M.D., independent executor of the Estate of Jerry Lloyd Doggett, filed this original proceeding seeking a writ of mandamus directing Respondent to vacate a 2019 order.[1] We conditionally grant the writ.

## BACKGROUND

In November 2004, Marilyn Doggett Stasila, the Real Party in Interest, filed an application to probate the will of Elwyn O. Doggett, her father, and issuance of letters testamentary. The will was admitted to probate and Marilyn was appointed independent executor. In September 2014, John, Marilyn's nephew and the executor of his father Jerry's estate, filed a petition for declaratory judgment on grounds that Elwyn's will needed to be construed with the will and codicils of Elwyn's wife, Mary Leone Langdon Doggett. Jerry is a beneficiary under the wills of Elwyn and Mary, his parents. John also filed an application to remove Marilyn as independent executor for gross misconduct or gross mismanagement, i.e., failure to pay property taxes that led to a tax lawsuit. He alleged that Marilyn failed to furnish a requested accounting. In an amended application, John also alleged that Marilyn failed to fund the testamentary trust under Elwyn's will.

The parties reached a mediated settlement agreement (MSA) in March 2015, which awarded Marilyn certain real property, a parcel of which was awarded to John. The MSA provided

---

[1] Respondent is the Honorable Janice Stone, Judge of the County Court at Law of Cherokee County, Texas.

for a survey of John's parcel and set forth certain boundary line requirements, and required that the parties execute special warranty deeds upon the survey's completion and within fifteen days from presentment. The MSA required the parties to use Thompson & Associates Surveyors. Marilyn subsequently objected to the "Thompson Survey" and hired James Crawford with RMC Surveying to conduct another survey. In December 2015, Marilyn filed a motion for judgment on mediated settlement agreement and application for injunctive relief to enjoin binding arbitration. The motion explained that a post-mediation dispute arose regarding the "Thompson Survey." At a hearing on January 7, 2016, Marilyn's counsel, Chris Day, told Respondent that he did not believe there were any contested issues because the parties "intend to accept what we call the Crawford survey." John's counsel responded, "[W]e've agreed to accept that survey [the Crawford Survey] as the survey that is – controls in the MSA."

Crawford signed a metes and bounds description on January 27. Marilyn filed an amended motion for judgment on mediated settlement agreement on November 4. She alleged that despite agreeing that the Crawford Survey would be used, John objected to the proposed allocation line in the survey plat and requested that it be changed. On December 2, Respondent signed a judgment on the MSA. The following paragraph of the judgment is marked out:

> THE COURT FINDS that on January 7, 2016, the parties announced in open court that they agreed not to use the survey and field notes prepared by Thompson & Associates Surveyors, as originally required per the MSA, and instead use the survey plat and field notes prepared by James Crawford of RMC Surveying dated October 8, 2015. Attached as Exhibit C, incorporated herein and made a part hereof, is a true and correct copy of the agreed-upon survey plat prepared by James Crawford of RMC Surveying dated October 8, 2015.

Respondent also marked out language ordering the parties to each pay half of the RMC surveying fees.

On April 6, 2018, Marilyn filed a motion for enforcement and contempt and, alternatively, breach of contract under a Rule 11 agreement made in open court. She alleged that Respondent had continuing, exclusive jurisdiction. According to Marilyn, John objected to the allocation line of the property to be partitioned. Attached to her motion is a letter, dated January 30, 2018, from Monty Shank, the general manager for the Upper Neches River Municipal Water Authority to John's attorney. The letter states that the Authority is in receipt of John's counsel's letter. Shanks further states that the Authority wanted the parties to reach an agreement as to the waterfront

allocation line, but it appears the parties could not agree. Accordingly, the Authority established the allocation line "to be the red dash line on the attached Ground Condition Detail Sketch, dated March 25, 2015 (Thompson & Associates, Tyler, TX)." Marilyn contended that John violated the MSA, the Rule 11 agreement, and the judgment by rejecting the agreed upon survey and seeking to have the boundary line moved. She further asserted breach of contract regarding the agreement in open court and the MSA, for which she sought specific performance.

At a hearing on Marilyn's motion, Day testified that John agreed to use the Crawford Survey. He did not recall any reservations, exceptions, or objections to using the survey. He testified that John accepted the survey "as the controlling survey for purposes of the MSA." He did not believe that the MSA referenced an allocation line. The allocation line became an issue after the January 2016 hearing and was discussed in his first amended motion, which Respondent heard on December 2, 2016.

Marilyn testified that she objected to the entire Thompson Survey, in part because of the allocation line. At the end of the January 2016 hearing, she believed that the entire Crawford Survey was accepted because John did not object to any line of it. This included the survey plat with a proposed allocation line. She and Day both testified that Respondent's 2016 judgment did not include a finding that the allocation line in the Thompson Survey was correct. Marilyn stated that the judgment reflects general acceptance of the Crawford Survey and contains no formal ruling that the Crawford Survey is not controlling. She recalled a meeting during which Shank stated that the Authority could deny access to the water front for both parties absent an agreement. She took issue with Shanks's statement that there was no agreement. She also learned that the Authority received a copy of the Thompson Survey after the January 2016 hearing. Because of John's attorney's letter to Shank, representing the absence of an agreement, and use of the Thompson Survey, Marilyn believed John formally breached their agreement.

John testified that he did not recall any agreement on the lake front allocation line. He explained that the Thompson Survey stated a proposed agreed lake allocation line, but Marilyn objected to the Thompson Survey. He did not recall any specific objection or written objection to the allocation line itself. John testified that he instructed his counsel to agree to the Crawford Survey, but not the allocation line. He denied either intending to agree to the Crawford Survey's allocation line at the January 2016 hearing or actually agreeing to that allocation line. He acknowledged that the Crawford Survey was accepted for purposes of governing the MSA. He

3

also acknowledged that his attorney sent a letter to Shank on January 24, 2018, which indicated that no agreement existed as to the allocation line. He denied bypassing the agreement to have the Authority set the line he wanted.

Craig Adams, one of John's attorneys, testified that the MSA never mentioned a lake allocation line, the lake allocation line was never discussed until after the January 2016 hearing, and no problem with the Thompson Survey's lake allocation line was ever expressed to him. Adams maintained that using the Crawford Survey for purposes of preparing the deeds was unrelated to the lake allocation line. He acknowledged that the allocation line in the Thompson Survey differs from that in the Crawford Survey. He testified that the MSA states, "The western boundary of the property that borders Lake Palestine shall be divided equally with each party getting approximately 129 feet of lake frontage." According to Adams, both surveys do so. Kenneth Raney, another of John's attorneys, stated that he did not agree to accept the allocation line on the Crawford Survey plat, but agreed to use it for purposes of what property John would receive. He stated that the allocation line was never mentioned.

In December, Respondent signed a letter ruling granting Marilyn's requested relief. On March 7, 2019, Respondent signed an order on Marilyn's motion for enforcement and found that (1) the parties agreed to use the Crawford Survey, (2) the "allocation line which extends out along the same course as the boundary line between the two properties, N 58° 59' 52" E, as set forth in [the Crawford Survey] was clearly set forth in the survey at the time of the January 7, 2016 hearing and that no contested issues were presented at that hearing," and (3) the allocation line in the survey is the correct one that the parties agreed to use. Respondent ordered that the allocation line identified in the Crawford Survey is the allocation line to be used by the parties. Respondent denied Marilyn's request for attorney's fees and travel costs and denied all relief not expressly granted. The order contains no language holding John in contempt. This proceeding followed.[2]

---

[2] John originally filed a notice of appeal with this Court, which was transferred to the Sixth Court of Appeals pursuant to a docket equalization order by the Texas Supreme Court. The appeal was dismissed for want of jurisdiction because the Sixth Court determined that the 2019 order related to a contempt proceeding. *See In re Estate of Doggett*, No. 06-19-00034-CV, 2019 WL 4124633 (Tex. App.—Texarkana Aug. 30, 2019, pet. filed) (mem. op.). The Sixth Court likewise dismissed John's petition for writ of mandamus because the transfer of the appeal did not confer jurisdiction on the Sixth Court in a separate original proceeding. *See In re Doggett*, No. 06-19-00081-CV, 2019 WL 4132505 (Tex. App.—Texarkana Aug. 30, 2019, orig. proceeding) (mem. op.). John then filed the current original proceeding with this Court.

Mandamus is an extraordinary remedy. ***In re Sw. Bell Tel. Co., L.P.***, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. ***In re Cerberus Capital Mgmt., L.P.***, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both prerequisites. ***In re Fitzgerald***, 429 S.W.3d 886, 891 (Tex. App.— Tyler 2014, orig. proceeding.). Mandamus relief is appropriate when a trial court issues an order after its plenary power expired. ***In re Brookshire Grocery Co.***, 250 S.W.3d 66, 68 (Tex. 2008); ***In re Johnson***, 557 S.W.3d 740, 742 (Tex. App.—Waco 2018, orig. proceeding).

## ABUSE OF DISCRETION

John contends that the order is void as an improper collateral attack on the judgment, is barred by res judicata, is a void advisory opinion, and is unsupported by legally sufficient evidence. In his collateral attack argument, John complains that the 2019 order is void because (1) Respondent's plenary power expired thirty days after December 2, 2016, when the judgment was signed, and (2) Marilyn seeks to avoid the binding force of the 2016 judgment. Because we conclude that Respondent lacked jurisdiction to sign the 2019 order, we need not determine whether the order is an impermissible collateral attack on the judgment.[3] *See* TEX. R. APP. P. 47.1.

A trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment. ***Shackelford v. Barton***, 156 S.W.3d 604, 606 (Tex. App.—Tyler 2004, pet. denied); TEX. R. CIV. P. 329b(d). A trial court's plenary power may be extended by a timely filed post-judgment motion. ***Shackelford***, 156 S.W.3d at 606-07; TEX. R. CIV. P. 329b(a), (e), (g). When, as here, no party to a judgment files a motion that extends the trial court's plenary power, the trial court loses jurisdiction over the judgment thirty days after the judgment is signed and has no power to set aside a judgment except by bill of review for sufficient cause. ***Shackelford***, 156

---

[3] Marilyn contends that John failed to preserve his complaint for appellate review by neglecting to first present it in the trial court. The record reflects that John complained to Respondent that the 2018 letter ruling permitted Marilyn to relitigate a previously asserted claim, which had been denied and dismissed with prejudice. Even so, an order issued after the expiration of a trial court's plenary power is void for lack of subject matter jurisdiction. ***Tex. Dep't of Public Safety v. LaRoussi***, 192 S.W.3d 637, 640 (Tex. App.—Tyler 2006, no pet.). "Subject-matter jurisdiction cannot be waived, and can be raised at any time." ***Alfonso v. Skadden***, 251 S.W.3d 52, 55 (Tex. 2008). Importantly, this Court is obligated to consider jurisdictional issues even when not raised by the parties. *See* ***City of Houston v. Rhule***, 417 S.W.3d 440, 442 (Tex. 2013) ("Not only may a reviewing court assess jurisdiction for the first time on appeal, but all courts bear the affirmative obligation 'to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it'").

S.W.3d at 607; TEX. R. CIV. P. 329b(f). Once plenary power expires, the trial court may engage only in certain specified activities with respect to its judgment, such as correcting clerical mistakes, supervising post-judgment discovery, enforcing its judgment, or declaring a judgment void. ***Custom Corporates, Inc. v. Security Storage, Inc.***, 207 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2006, no pet.); TEX. R. CIV. P. 329b(f).

In the present case, the MSA states that the "parties agree to settle all claims and controversies between them, asserted or assertable, in this case." In the judgment, Respondent found that the parties resolved their differences and agreed to distribution of the property of Elwyn's and Mary's estates. The judgment further states as follows:

> **IT IS THEREFORE ORDERED** that the above-entitled and numbered cause, all claims, and causes of action be, and the same is hereby in all things dismissed with prejudice to the rights of the parties to reassert said causes of action, or any part thereof, and the costs of Court herein are taxed against the party incurring same, for which execution may issue.
> All other relief not set forth herein is DENIED.

Accordingly, the 2016 judgment finally disposes of all parties and claims between them. *See* ***Lehmann v. Har-Con Corp.***, 39 S.W.3d 191, 200 (Tex. 2001); *see also* ***Huston v. F.D.I.C.***, 800 S.W.2d 845, 848 (Tex. 1990) ("probate order or judgment is final if it conclusively disposes of and is decisive of the issue or controverted question for which that particular part of the proceeding was brought, even if the decision does not fully and finally dispose of the entire probate proceeding"); ***Estate of Doggett***, No. 06-19-00034-CV, 2019 WL 4124633, at *1 (Tex. App.—Texarkana Aug. 30, 2019, pet. filed) (mem. op.) (noting that 2016 judgment is final); ***In re Harris Cty. Hosp. Dist. Auxiliary, Inc.***, 127 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (summary judgment order dismissing plaintiff's cause of action with prejudice and ordering that plaintiff take nothing showed finality).

Because no party filed a post-judgment motion, Respondent's plenary power expired thirty days after she signed the judgment on December 2, 2016. *See* ***Shackelford***, 156 S.W.3d at 607; *see also* TEX. R. CIV. P. 329b(d). Marilyn maintains that, as the probate court, Respondent had continuing jurisdiction regarding claims related to the estate. However, while Respondent's probate jurisdiction continues over the administration of the estate until the estate is disposed of, that continuing jurisdiction does not alter her plenary power over final judgments. *See* ***Smalley***

6

*v. Smalley*, 436 S.W.3d 801, 806 n.9 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also In re Jacky*, 506 S.W.3d 550, 555 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding).

And although a trial court has the authority to enforce its judgment after plenary power expires, "the trial court may not issue an order that is inconsistent with the judgment or that otherwise constitutes a material change in the substantive adjudicative portions of the judgment." *Riggins v. Hill*, 461 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see generally Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 795 (Tex. App.—Tyler 2007, no pet.); *see also* TEX. R. CIV. P. 308 (court shall cause its judgments and decrees to be carried into execution). As previously stated, Respondent marked out language in the 2016 judgment (1) incorporating the Crawford Survey and (2) finding that on January 7, 2016, the parties announced in open court that they agreed not to use the survey and field notes prepared by Thompson & Associates, as originally required by the MSA, and to instead use the survey plat and field notes prepared by RMC Surveying. Unlike the judgment, the 2019 order specifically finds that (1) the Crawford Survey, attached and incorporated by reference to the order, is the survey agreed to be used by the parties, (2) the "allocation line which extends out along the same course as the boundary line between the two properties, N 58° 59' 52" E, as set forth in [the Crawford Survey] was clearly set forth in the survey at the time of the January 7, 2016 hearing and that no contested issues were presented at that hearing," and (3) the allocation line in the Crawford Survey is the correct allocation line that the parties agreed to use. The 2019 order further requires the parties to use the Crawford Survey's allocation line. This comparison of the language between the judgment and the order clearly demonstrates that the 2019 order is inconsistent with the 2016 judgment and materially changes substantive adjudicative portions of the judgment with respect to the Crawford Survey.

According to Marilyn, however, her alternate breach of contract claim "was not the subject of the December 2, 2016, Judgment as no breach of the Rule 11 Agreement had yet occurred and was not pending before the court when that Judgment was signed." Marilyn states that she could not have brought suit on breach of contract until January 24, 2019, when she says the breach occurred. The record does reflect that Marilyn broached the issue of the allocation line before Respondent signed the 2016 judgment. Her amended motion for judgment on the MSA, filed in November 2016, states, "On January 7, 2016 the parties announced an agreement in open court that the RMC survey plat would be used for the Marina Tract. Despite the agreement, John's

7

attorneys objected to a 'proposed allocation line' contained in the RMC survey plat and requested that it be changed." Yet, when Respondent signed the judgment in December 2016, which marked out language that essentially required the parties to use the Crawford Survey despite the purported Rule 11 agreement, Marilyn filed no post-judgment motions while Respondent retained plenary power, nor did she appeal from the judgment.

"When a dispute arises over a settlement agreement while the trial court still has jurisdiction over the underlying action, any claim to enforce the settlement agreement should, if possible, be asserted in the original court under the original cause number." **B.Z.B., Inc. v. Clark**, 273 S.W.3d 899, 904 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The dispute in this case apparently arose before plenary power expired and the omitted language in the judgment should have alerted Marilyn to the need to file a post-judgment motion before expiration of Respondent's plenary power. Once Respondent's plenary power expired, Marilyn, as the party seeking to enforce the parties' agreement regarding the allocation line, was required to pursue a separate breach of contract action. *See **In re Vaishangi, Inc.**, 442 S.W.3d 256, 260 (Tex. 2014) (orig. proceeding) (per curiam); *see also **Clark**, 273 S.W.3d at 904. Marilyn could not reinvest the trial court with subject matter jurisdiction by filing her motion for enforcement and alternative breach of contract claim after plenary power expired. *See **Vaishangi**, 442 S.W.3d at 260 (a party can pursue a claim for breach of a settlement agreement, but party must pursue a separate claim for breach of contract; when plenary power expires, a party cannot reinvest trial court with jurisdiction by filing post-judgment motion to enforce); *see also **Univ. Gen. Hosp. L.P. v. Siemens Med. Solutions USA, Inc.**, No. 01-12-00174-CV, 2013 WL 772951, at *3 (Tex. App.—Houston [1st Dist.] Feb. 28, 2013, no pet.).

We, therefore, conclude that Respondent abused her discretion by signing the 2019 order, which is inconsistent with and materially changes substantive adjudicative portions of the 2016 judgment, after her plenary power expired. Because we so hold, we need not address John's remaining arguments. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having determined that Respondent abused her discretion by signing the 2019 order after expiration of plenary power, we ***conditionally grant*** John's petition for writ of mandamus and direct Respondent to vacate the March 7, 2019 order. We trust that Respondent will promptly

8

comply with this opinion and order. The writ will issue only if Respondent fails to do so ***within ten days after the date of the opinion and order***. Respondent shall furnish this Court, within the time for compliance with this Court's opinion and order, a certified copy of her order evidencing compliance.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 13, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 13, 2019**

**NO. 12-19-00300-CV**

**JOHN DOGGETT, M.D., INDEPENDENT EXECUTOR
OF THE ESTATE OF JERRY LLOYD DOGGETT,**
Relator
V.

**HON. JANICE STONE,**
Respondent

---

**ORIGINAL PROCEEDING**

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by John Doggett, M.D., Independent Executor of the Estate of Jerry Lloyd Doggett; who is the relator in appellate cause number 12-19-00300-CV and a party in trial court cause number 10698, pending on the docket of the County Court at Law of Cherokee County, Texas. Said petition for writ of mandamus having been filed herein on September 4, 2019, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, *conditionally granted*.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate her order of March 7, 2019; the writ will not issue unless the HONORABLE JANICE STONE fails to comply with this Court's order within ten (10) days from the date of this order.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*