In re RAPID SETTLEMENTS, LTD.
and Rapid Management Corp.

and

Rapid Settlements, Ltd. and Rapid
Management Corp.,
Appellants,

v.

BHG Structured Settlements, Inc., Berkshire Hathaway Life Insurance Company of Nebraska and Bryan Cory Steele, Appellees.

Nos. 09–06–057 CV, 09–06–155 CV.

Court of Appeals of Texas,
Beaumont.

Sept. 14, 2006.

Harry J. Fleming, Susan Hatcher, Stewart A. Feldman, The Feldman Law Firm LLP, Houston, for relators/appellants.

John H. Marks, W. Scott Hastings, Andrew S. Murr, Locke Liddel & Sapp, LLP, Dallas, for real parties in interest/appellees.

Bryan Cory Steele, Coldspring, pro se.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

PER CURIAM.

Rapid Settlements, Ltd. and Rapid Management Corporation contend the trial court abused its discretion in setting aside the arbitrator's orders and staying the arbitration proceedings. The arbitration clause is contained in an agreement to transfer structured settlement payments. Because court approval is a condition precedent to the formation of the contract that contains the arbitration clause, we hold the trial court did not abuse its discretion when it stayed arbitration pending the approval process. Accordingly, we deny mandamus relief and affirm the trial court's order.

Bryan Cory Steele is entitled to monthly payments under an annuity purchased from Berkshire Hathaway Life Insurance Company of Nebraska ("BHLN"). Steele also receives payments from two other annuity contracts with other companies. The annuities fund a structured settlement agreement entered into by the parties to a suit filed in Texas state court. The annuity contract contains a nonassignability clause. Steele signed an agreement to transfer payments from the three annuities to Rapid Settlements, Ltd. for $17,000. This transfer agreement contains an arbitration clause that provides: "disputes under this Agreement of any nature whatsoever ... shall be resolved through demand by any interested party to arbitrate the dispute in and under the laws of the State of Texas and shall submit the same to a neutral, arbitration association for resolution pursuant to its single arbitrator, expedited rules."

Rapid Settlements filed an application for approval in the district court of the county where Steele resided, San Jacinto County, Texas. BHG Structured Settlements, Inc., ("BHG") and BHLN are among the interested parties Rapid Settlements served with notice of the application. BHG and BHLN advised the trial court that the fair market value of the affected payments is $24,138.64, and expressed their willingness to remit that sum

to Steele without affecting the payments Steele would receive from any other annuity issuers. Rapid Settlements responded with a demand for arbitration before Jeffrey R. Newport. In its request, Rapid requested a temporary restraining order. The arbitrator signed a "Temporary Injunction" that ordered BHG and BHLN to refrain from offering competing bids to customers of Rapid and ordered Steele to use his best efforts to complete the transfer to Rapid.

On the same day that the arbitrator signed the order, BHG and BHLN filed an application to stay the arbitration and to set aside any injunction issued by the arbitrator. In a letter to the arbitrator mailed the following day, Rapid sought to "complete the transfer in arbitration" before the trial court conducted its next scheduled hearing. Rapid appeared before the trial court at its scheduled transfer approval hearing and announced that it had obtained an injunction. Counsel for BHG, although present, could not speak because of the arbitrator's injunction. At a hearing conducted a few days later, the trial court set aside the arbitrator's order and prohibited Rapid Settlements and Rapid Management from seeking the arbitrator's approval of the proposed transfer of Steele's structured settlement payment rights or from seeking injunctive relief against BHG or BHLN pending the trial court's determination of the application to stay the arbitration. At a third hearing several days later, Rapid Settlements and Rapid Management requested a continuance of a hearing on their application to approve the transfer agreement. A witness testified that neither BHG nor BHLN had a contractual relationship with Rapid Settlements or Rapid Management, that their contractual obligation to Steele did not include an arbitration agreement, and that neither BHG nor BHLN asserted any claims against Rapid Settlements or Rapid

Management through the transfer agreement. BHG and BHLN took the position that the lack of court approval meant the transfer agreement was not yet in effect and that the arbitration provision contained within the transfer agreement was therefore not enforceable. The trial court granted the application to stay the arbitration proceedings and set aside the arbitrator's orders.

Rapid Settlements and Rapid Management filed notice of appeal and a petition for writ of mandamus. Both their brief and their petition contend the trial court abused its discretion in setting aside the arbitrator's orders and staying the arbitration proceedings between Rapid Settlements and the Berkshire parties and between Rapid Settlements and Steele.

 First, we must determine whether the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA") applies in this case. *See* 9 U.S.C. §§ 1–16(FAA); Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–.098 (Vernon 2005) (TAA). The TAA applies because Rapid Settlements and Steele are both Texas residents and the transfer agreement states that the agreement shall be determined in and under the laws of the State of Texas. The FAA is implicated because the annuity contracts are payable to a Texas resident by residents of other states. The FAA preempts the TAA if: (1) the agreement is in writing; (2) it involves interstate commerce; (3) it can withstand scrutiny under traditional contract defenses; and (4) state law affects the enforceability of the agreement. *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex.2005) (orig.proceeding). In Nexion Health, the Supreme Court held the FAA preempted the TAA because the TAA interfered with the enforceability of the arbitration agreement by adding the signature of the par-

ty's counsel as an additional requirement for arbitration agreements in personal injury cases. *Id.*

■■■ At oral argument, the Rapid parties suggested the FAA preempts state statutes in this case. Their brief in the appeal contends the TAA applies and we understand the contention at oral argument to be that the FAA preempts the Structured Settlement Protection Act, not the TAA. In determining whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state law principles of contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995). The FAA permits state law to be applied if the law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (citing 9 U.S.C. § 2). Courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions, and state law cannot condition the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 908–09 (1996).

■■■ The Structured Settlement Protection Act ("SSPA") regulates the transfer of rights to structured settlement payments. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 141.001–.007 (Vernon 2005).[1] The SSPA provides that no transfer of structured settlement payment rights shall be effective unless the transfer has been approved in advance in a final court order

that finds the transfer is in the best interest of the payee, the payee has been advised in writing to seek independent professional advice regarding the transfer, and the transfer does not contravene any applicable statute or order. Tex. Civ. Prac. & Rem.Code Ann. § 141.004(1), (2), (3) (Vernon 2005). The Rapid parties contend the statutory requisite of court approval of the transfer impermissibly prohibits arbitration. We disagree. None of the court findings required by section 141.004 prohibits the creation of arbitration rights in a transfer agreement. *See id.* Moreover, the SSPA does not explicitly address the issue of arbitrability of structured settlement transfer contracts. Nothing in the statute prohibits parties from including an arbitration provision in the transfer agreement. State law governs issues concerning the validity and enforceability of contracts generally. *See Perry*, 482 U.S. at 492 n. 9, 107 S.Ct. 2520. Section 141.004 of the SSPA requires prior court approval of the transfer agreement, not the arbitration clause, and is therefore not pre-empted by the FAA. Tex. Civ. Prac. & Rem.Code Ann. § 141.004 (Vernon 2005); *compare Casarotto*, 517 U.S. at 687, 116 S.Ct. 1652 (statute regulating arbitration clauses in franchise agreements was pre-empted by FAA); *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753, 769 (1995) (statute prohibiting pre-dispute agreements to arbitrate was pre-empted by FAA).

The plain language of the SSPA requires court approval before the agreement is effective and can be enforced. Rapid Settlements and Rapid Management argue that the various sections of Chapter

---

1. In describing the background and purpose for the Structured Settlement Protection Act, the bill analysis for the legislation noted the lack of regulation of secondary factoring companies and the dependence of injured persons on government assistance programs. H.B. 1920, 77th Leg., R.S., Bill Analysis, Mar. 6, 2001.

141, Civil Practice and Remedies Code, should be construed to make a transfer agreement immediately effective upon execution. In support of their argument, they contend the three day rescission provision of section 141.003(8) presupposes that the contract is immediately enforceable between the parties. Section 141.003 requires that separate disclosures—including a disclosure that the payee has the right to cancel the agreement not later than three business days after the date the transfer agreement is signed by the payee—be made at least three days before the date the transfer agreement is signed. Tex. Civ. Prac. & Rem.Code Ann. § 141.003 (Vernon 2005). Section 141.004 requires that court approval be obtained "in advance" of the transfer. Tex. Civ. Prac. & Rem.Code Ann. § 141.004 (Vernon 2005). In the SSPA, "transfer" means any sale, assignment, or other alienation or structured settlement payment rights other than creation or perfection of certain security interests. Tex. Civ. Prac. & Rem. Code Ann. § 141.002(18) (Vernon 2005). Thus, the word "transfer" in section 141.004 refers to the transfer agreement, not just to the payment to the transferee.

■ Because section 141.004 requires court approval in advance of the transfer, the three day rescission period mentioned in section 141.003 necessarily commences after the court approves the transfer. If no part of the contract is effective unless the trial court approves the transfer, the court approval required by section 141.004 does not restrict the parties' right to elect arbitration as a means of resolving any disputes that arise between them. If the trial court approves the transfer, and a dispute arises between the parties, the arbitration clause may be invoked in the manner provided by the parties in their contract. Such a reading of the statute avoids any potential conflict between the FAA and the SSPA, gives full effect to section 141.003(8) and all of section 141.004, and is therefore favored over a construction of the statute that would render part of the statute ineffective. *See* Tex. Gov't Code Ann. § 311.021 (Vernon 2005).

■ Our construction of section 141.004 as a condition precedent to the formation of an enforceable contract is also consistent with federal law. A federal statute imposes a tax equal to forty percent of the factoring discount unless the transfer is approved in advance in an order issued under the authority of an applicable state statute by an applicable state court. 26 U.S.C. § 5891. The order must find the transfer does not contravene any federal or state law or court order and that the transfer is in the best interest of the payee. *Id.* This federal statute clearly contemplates state court oversight of transfers of rights in structured settlement agreements; therefore, the fact that a Texas statute requires court approval before such a transfer can take place does not contravene federal law. *See id.* Because court approval is required before any part of the contract is enforceable, and nothing in section 141.004 prohibits arbitration provisions in transfer agreements, the SSPA does not conflict with the FAA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 141.004 (Vernon 2005).

■ We conclude that state law requires court approval of any transfer of structured settlement payment rights, and this state law is not pre-empted by federal law. Although Rapid Settlements applied to the trial court for an order approving the transfer, it is undisputed that no order of approval existed when the trial court entered the stay of arbitration proceedings. The only arbitration provision produced in these proceedings is the one contained in the transfer agreement between

Rapid Settlements and Steele. Because the agreement is not effective until the trial court approves the transfer in a final order, and it is undisputed that no such order exists, there is no agreement to arbitrate.

Ordinarily, the court rather than the arbitrator decides such "gateway matters" as whether a valid arbitration agreement exists and whether an existing agreement binds a nonparty. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Rapid Settlements and Rapid Management contend BHG and BHLN failed to establish that there is not an agreement to arbitrate. As we have already noted, unless the transferee obtains a court order approving the transfer, the transfer agreement is not effective, and none of its provisions, including the arbitration clause, can be enforced. Thus, BHG and BHLN established that an agreement to arbitrate does not exist. A court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate. Tex. Civ. Prac. & Rem.Code Ann. § 171.023(a) (Vernon 2005).

The Rapid parties also contend that, as non-parties to the transfer agreement, the Berkshire parties lack standing to seek a stay of arbitration proceedings. The filing of an application for approval of the transfer agreement invoked the trial court's jurisdiction, and the trial court thereafter possessed plenary power over the controversy and could take such actions as were necessary to protect its juris-

diction. *See generally Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex.1979) (describing a court's power to protect its jurisdiction as an inherent judicial power). BHG and BHLN are parties to the annuity contracts subject to transfer in the proposed structured settlement transfer agreement, and the SSPA requires the transferee to provide them with a notice of the proposed transfer and the application for authorization. *See* Tex. Civ. Prac. & Rem.Code Ann. § 141.006(b) (Vernon 2005). The noticed parties are entitled to respond to the application, may submit written comments to the court, and may participate in the hearing. *Id.* Because they are entitled to participate in the hearing on the application, it follows that they may seek protection of that right from the trial court with jurisdiction over the controversy. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.023 (Vernon 2005). Furthermore, BHG and BHLN are directly affected by the arbitrator's order, as the arbitrator claimed to have jurisdiction over them and commanded them to cease competing with the Rapid parties in the State of Texas. By entering an injunction in the absence of a valid agreement to arbitrate, the arbitrator interfered with the trial court's judicial power and the Berkshire parties' right to participate in the transfer approval proceeding.[2] We hold BHG and BHLN have standing to seek a stay of arbitration proceedings. The trial court did not abuse its discretion when it stayed the arbitration proceedings and set aside the arbitrator's injunction.

---

2. When the trial court entered its order, there were two proceedings pending on the trial court's docket: Rapid Settlement's application to approve the transfer agreement with Steele, and BHG's and BHLN's application for injunctive relief from the unauthorized act of the arbitrator. The order at issue in this appeal and in this original proceeding was issued in the injunction proceeding but direct-

ly affected the transfer approval proceeding pending in the same court. Rapid Settlements and Rapid Management filed a response to the Berkshire parties' application for an injunction, and in that response the Rapid parties specifically asked the trial court to order the parties to arbitrate in the transfer approval proceeding.

Rapid Settlements and Rapid Management contend the trial court abused its discretion by staying the arbitration proceedings between the Rapid parties and Steele. They premise their arguments on the validity of the arbitration agreement. We have held that the contract in which the arbitration agreement is contained cannot be enforced absent a final court order approving the transfer agreement, and it is undisputed that no such order exists. There is no agreement to arbitrate between the Rapid parties and Steele, and the trial court did not abuse its discretion when it stayed the arbitration. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.023 (Vernon 2005).

 Mandamus is appropriate if a state court denies a party the right to arbitrate under the FAA. *In re L & L Kempwood Assoc., L.P.*, 9 S.W.3d 125, 128 (Tex.1999) (orig. proceeding). A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999) (orig. proceeding), *abrogated in part on other grounds by In re Halliburton Co.*, 80 S.W.3d 566, 571–72 (Tex.2002) (orig. proceeding). Rapid Settlements and Rapid Management have not shown that they have a right to arbitrate. Accordingly, they have not established their right to mandamus relief.

The trial court's order is affirmed and the petition for writ of mandamus is denied.

AFFIRMED; WRIT DENIED.