MARY'S OPINION HEADING 









                                                NO.
12-07-00008-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER,
TEXAS

RAPID
SETTLEMENTS, LTD.,     §          APPEAL FROM THE 145TH

APPELLANT

 

V.        

SYMETRA
LIFE INSURANCE      §          JUDICIAL DISTRICT COURT OF

COMPANY
AND SYMETRA

NATIONAL
LIFE INSURANCE

COMPANY
AND ABIGAIL DEMPSEY,

APPELLEES §          NACOGDOCHES
COUNTY, TEXAS

                                                                             
                                                                              

OPINION

            Rapid Settlements, Ltd. appeals the trial court’s order
granting a temporary injunction.  The
order enjoins Rapid from seeking to confirm, enforcing, or compelling performance
of an arbitration award transferring to Rapid, pursuant to a transfer
agreement, structured settlement payments to be received by Abigail
Dempsey.  Because we conclude the trial
court did not abuse its discretion in granting the temporary injunction, we
affirm the trial court’s order.

 

Background and Procedural History








            Symetra Life Insurance Company issued an annuity to fund
a structured settlement concluding litigation arising out of Dempsey’s claim of
an on the job injury at a Texas nursing home. 
In addition to a lump sum payment, the settlement guaranteed Dempsey
monthly payments of $850.00 for twenty years, the last guaranteed payment due
October 25, 2010.  Thereafter, the
monthly payments were life contingent, that is they were payable to Dempsey but
not to her estate or heirs if she died after October 25, 2010.  In January 2003, the 145th Judicial District
Court of Nacogdoches County approved Dempsey’s transfer of her remaining
$78,200.00 in guaranteed monthly payments in exchange for $40,000.00.

            On March 28, 2005, Dempsey signed a transfer agreement in
which she agreed to assign to Rapid 120 monthly payments of $800.00 out of the
$850.00 monthly payment beginning on November 25, 2010 through and including
October 25, 2020.  The agreement provided,
as follows: “This transfer agreement is subject to court approval.  A court must approve assignor’s [Dempsey’s]
sale, assignment and transfer to Rapid Settlements of the Assigned Payments
before such payments can be transferred and the Assignment Price . . . paid to
Assignor.”  However, under the agreement,
Dempsey granted to Rapid a security interest in all the assigned payments, “regardless
of whether such transfer and assignment is consummated,” “to secure payment
of the assigned payments to Rapid Settlements and assignor’s other obligations
hereunder.”  Of particular significance
in this case, the transfer agreement contained an arbitration clause providing
that any dispute of any nature under the agreement was to be resolved through
arbitration, and the arbitrator’s decision would be final, binding, and
nonappealable. 

            As required by Texas Civil Practice and Remedies Code
section 141.006, in May 2005, Rapid applied to the trial court for approval of
the transfer of the periodic payments. 
The agreement and the accompanying disclosure statement revealed that in
exchange for the transfer of 120 payments totaling $96,000.00 and having a
present value of $64,916.00, Dempsey was to receive $9,000.00 ($14,000.00 less
$5,000.00 for Rapid’s attorney’s fees). 
Symetra opposed the transfer.

            The trial court conducted a hearing on Rapid’s
application for approval of the transfer agreement.  Both Dempsey and her husband testified in
support of the agreement.  Both told the
court that they were aware of the disparity between the $9,000.00 they were to
receive and the $64,916.00 present value[1] of the 120 payments they were to transfer
to Rapid.  They testified that their nine
year old grandson who lived with them suffered from hydro exothermal dysplasia,
that is, he had no sweat glands.  They
wanted to buy him a special cooling jacket costing between $1,500.00 and
$3,000.00 so he could play outside like other boys.  The rest of the money they intended to use to
fix up a nice inside bathroom for him. 
In response to the court’s questions, they said they could not obtain
the money from any other source, and that they realized their grandson would
outgrow the special cooling jacket within two years.

            Unsurprisingly, the trial court denied approval of the
transfer finding that Rapid had not shown that the transfer was in the best
interest of the payee (Dempsey), as required by Texas Civil Practice and
Remedies Code section 141.004.  The trial
court further found that the transfer would contravene section 141.007(b)
providing that any claim that the payee had breached the agreement shall be
determined in and under the laws of this state, and also providing that the
transfer agreement may not authorize the transferee or any other party to
confess judgment or consent to the entry of judgment against the payee.  The trial court further found that the
transfer agreement contravened section 141.007(c), which prohibits the transfer
of life-contingent payments 

 

unless,
prior to the date on which the payee signs the transfer agreement, the
transferee has established and agreed to maintain procedures reasonably
satisfactory to the structured settlement obligor and the annuity issuer for:
(1) periodically confirming the payee’s survival; and (2) giving the structured
settlement obligor and the annuity issuer prompt written notice in the event of
the payee’s death.

 

The court signed its order
denying approval of the transfer on July 17, 2005.

            On July 19, 2005, two days after the trial court denied
approval of the transfer, Dempsey signed a promissory note promising to pay
Rapid $1,000.00 due September 2, 2005, “or earlier upon approval of the
Transfer Agreement . . . by a court or in arbitration proceedings.”  The note recites that it was for advances
made to Dempsey against the payment of the assignment price under the transfer
agreement, and that it was secured by the transfer agreement.  The note also provided that any dispute
arising out of a breach of this note or any of the other loan documents shall
be resolved by arbitration, the single arbitrator’s decision to be final,
binding, and nonappealable.[2]

            Wasting no time, Rapid submitted its demand for
arbitration on August 13, 2005 reciting that Dempsey was a party to the
Transfer Agreement, which provided for arbitration, and demanding arbitration
of a dispute involving damages related to Dempsey’s breach of the Transfer
Agreement.  Rapid also alleged that it
had advanced Dempsey $2,000.00 pending completion of the transfer, but that
Dempsey had breached the contract “by not completing actions required by the
court considering approval.”  It alleged
that Dempsey obtained the $2,000.00 under false pretenses in an attempt to
commit fraud on Rapid.  The arbitrator
scheduled a hearing and sent notice thereof to the interested parties including
Symetra.  Symetra did not participate in
the arbitration proceedings.

            After a telephone conference with Dempsey, the arbitrator
entered an award based on agreed findings. 
The award stated the arbitrator’s jurisdiction “derived from the
contractual agreement of the parties as set forth in the transfer agreement.”  The arbitrator further concluded that he had “authority
to enter an award based upon the garnishment of the res, here being the
assigned payments.”  “Further, the
arbitrator [found] that Symetra’s position is in the nature of a stakeholder
similar to that in an interpleader action.” 
Based on agreed findings, the arbitrator found the transfer agreement
was valid, binding, and enforceable, that “Dempsey breached the promissory note
with Rapid, and that in satisfaction thereof the parties have agreed to a
complete transfer pursuant to the [Texas Structured Settlement Protection] Act.”

            The arbitrator then ordered the transfer to Rapid of the
same 120 monthly payments of $800.00 for the same consideration, $14,000.00
less $5,000.00, specified in the transfer agreement whose approval had been
rejected by the trial court in its July 17, 2006 order.  The arbitrator found that the transfer
represented the fair market value of the payments, that the transfer was in
Dempsey’s best interests, that she had no dependents, and that the money was to
be used for home repairs.  The award also
ordered Symetra to pay Rapid the payments whose transfer had been denied by the
trial court.

            On October 31, 2005, Rapid filed its petition for
confirmation of the award in the County Court at Law No. 3 in Harris
County.  Symetra successfully sought to
abate the Harris County proceeding urging the prior consideration of the matter
by the 145th District Court of Nacogdoches County, the trial court herein, and
that under the Texas Structured Settlement Protection Act (SSPA), jurisdiction
and venue were in Nacogdoches County where Dempsey resides.  The Harris County court abated the Harris
County case on November 29, 2006.

            Symetra then filed its petition in the trial court asking
for injunctive relief to prevent Rapid and Dempsey from seeking to enforce or
confirm the arbitration award.  Symetra
also asked the court to declare the arbitration provision in the Transfer
Agreement invalid because Rapid had not obtained the proper court’s approval of
the proposed transfer and because the arbitration provision was an attempt to
evade the safeguards provided by the SSPA and was unconscionable.

            On December 14, 2006, Rapid filed in the trial court its
Application for Confirmation of the Arbitration Award.

            On December 19, 2006, the trial court signed a temporary
injunction ordering Rapid and Dempsey

 

not
to do anything directly or indirectly, in Harris County or anywhere else other
than in this Court, to seek to confirm, enforce or compel performance under the
Arbitration Award including but not limited to by pursuing or taking any action
in Cause No. 850538 in County Court at Law No. 3, Harris County, Texas or any
appeal or mandamus therefrom from the date of this Order until judgment in this
Cause is rendered by this Court.

 

 

            Rapid contends (1) that the trial court no longer had
jurisdiction to issue the injunction, (2) that 
the anti–suit injunction was improper, (3) that the Federal Arbitration
Act preempts the Texas Structured Settlement Protection Act, (4) that the
arbitration award is valid because it arose out of a valid agreement to
arbitrate contained in the transfer agreement and the July 19, 2005 promissory
note, and (5) that Symetra has not shown a probable right to recover or
irreparable injury.

 

                                    Jurisdiction

            Rapid first insists that the
trial court lacked jurisdiction when it issued its temporary injunction,
because its plenary power had expired thirty days after its order refusing to
approve the transfer agreement.  

            “A trial court has the power to enforce its judgments
even after its plenary power has expired.” 
Wall St. Deli, Inc. v. Boston Old Colony Ins. Co., 110
S.W.3d 67, 69 (Tex. App.–Eastland 2003, no pet.) (citing Arndt v. Farris,
633 S.W.2d 497, 499 (Tex. 1982)).  “That
power is part of the court’s jurisdiction, and the court may employ suitable
methods to enforce its jurisdiction.”  Arndt,
633 S.W.2d at 499.  A court may enjoin
proceedings in other courts when their prosecution will delay, obstruct, or
otherwise interfere with the proper enforcement of its judgment.  Hunt Prod. Co. v. Burrage, 104
S.W.2d 84, 87-88 (Tex. Civ. App.–Dallas 1937, writ dism’d w.o.j.) Consequently,
the Dallas Court of Appeals granted an anti-suit injunction almost four years
after judgment.  In another case, the
court of appeals held that the trial court did not abuse its discretion in
granting an anti-suit injunction more than six months after its plenary power
had expired.  Bridas Corp. v.
Unocal Corp, 16 S.W.3d 887, 889, 893 (Tex. App.–Houston [14th Dist.]
2000, pet. dism’d w.o.j.).  

            In this case, the trial court issued the temporary
injunction seventeen months after it signed the order denying approval of the
transfer.  Although its plenary power had
expired, the trial court still retained power to enjoin interference with its
order.  See Arndt, 633
S.W.2d at 499. 

 

Anti-Suit Injunctions

            Rapid next contends the trial court erred in enjoining it
from proceeding in other courts to confirm, enforce, or compel performance
under the arbitration agreement, because none of the four situations justifying
such action are present in the instant case. 
Rapid maintains that its petition for confirmation of the arbitration
award in the Harris County court is not the result of the trial court’s denial
of the transfer of the structured settlement payments, but rather the result of
the arbitration and award arising from Dempsey’s breach of contract.  Citing Armstrong v. Steppes Apartments,
Ltd., 57 S.W.3d 37, 49-50 (Tex. App.–Fort Worth 2001, pet. denied),
Rapid also points out that when an action can be filed in either of two courts,
the “first court acquiring jurisdiction will retain jurisdiction.”  Since Rapid first sought to confirm the award
in Harris County, it argues that it is the Harris County court that has
jurisdiction.  We disagree.

            Subject to a showing by the party seeking the injunction
that clear equity demands it, an anti-suit injunction is proper in four
instances: (1) to address a threat to the court’s jurisdiction; (2) to prevent
the evasion of important public policy; (3) to prevent a multiplicity of
lawsuits; or (4) to protect a party from vexatious or harassing
litigation.  Gonzales v. Reliant
Energy, Inc., 159 S.W.3d 615, 623 (Tex. 2005).  At least two of the four circumstances in
which an anti-suit injunction is warranted are present here.  

            First, the confirmation in Harris County of an
arbitration award that transfers Dempsey’s structured settlement payment rights
in defiance of the order denying that transfer by the trial court would render
the judgment of the trial court a nullity. 
The trial court possessed the inherent power to enjoin another
proceeding whose prosecution would obstruct or interfere with the proper
enforcement of its judgment.  Arndt,
633 S.W.2d at 499.  Second, we share the
trial court’s view that the injunction was necessary to prevent Rapid’s evasion
of an important public policy declared by the legislature in the SSPA, Tex. Civ. Prac. & Rem. Code Ann. §§
141.001–.007 (Vernon 2005), whose passage was prompted by the abuses
illustrated by the facts of this case. 
Rapid endeavored through arbitration to effect a transfer of Dempsey’s
payment rights based upon purported security agreements taken in contravention
of the statute and despite the trial court’s denial of approval.  Its conduct is clearly an attempted evasion
of the SSPA and the policy that impelled its adoption.  Because either of
these circumstances warrant an anti-suit injunction, Rapid’s argument to the
contrary is without merit.

            

            Federal
Preemption

            Rapid contends that the SSPA does not apply to this case
because it is preempted by the Federal Arbitration Act (FAA).  The FAA preempts state statutes if (1) the
agreement is in writing, (2) it involves interstate commerce, (3) it can
withstand scrutiny under traditional contract defenses, and (4) state law
affects the enforceability of the agreement. 
9 U.S.C.A. § 1-16; In re Rapid Settlements, Ltd., 202
S.W.3d 456, 459 (Tex. App.–Beaumont 2006, orig. proceeding) (citing In Re
Nexion Health at Humble, Inc. 173 S.W.3d 67, 69 (Tex. 2005) (orig.
proceeding)).  The FAA permits state law
to be applied if the law arose to govern issues concerning the validity,
revocability, and enforceability of contracts generally.  See Perry v. Thomas, 482 U. S.
483, 492 n.9, 107 S. Ct. 2520, 2527 n.9, 96 L. Ed. 2d 426 (1987).  However, courts may not invalidate
arbitration agreements under state laws applicable only to arbitration
provisions.  Doctor’s Assocs., Inc.
v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d
902 (1996).  In Casarotto,
the court held the FAA preempted a state statute regulating arbitration clauses
in franchise agreements.  Id.,
517 U.S. at 688, 116 S. Ct. 1652, 1657.  In another Supreme Court case, the Court held
the FAA preempted an Alabama statute prohibiting predispute arbitration
agreements.  Allied Bruce Terminal
Cos. v. Dobson, 513 U.S. 265, 281, 115 S. Ct. 834, 843, 130 L. Ed. 2d
753 (1995).

 

States
may regulate contracts, including arbitration clauses, under general contract
law principles and they may invalidate an arbitration clause “upon such grounds
as exist at law or in equity for the revision of any contract.” 9
U.S.C. § 2 (emphasis added).  What States
may not do is decide that a contract is fair enough to enforce all its basic
terms (price, service, credit), but not fair enough to enforce its arbitration
clause.  The Act makes any such state
policy unlawful, for that kind of policy would place arbitration clauses on an
unequal “footing,” directly contrary to the Act’s language and Congress’
intent.

 

 

Id.

            In In re Rapid Settlements, the Beaumont
court of appeals examined the content of the SSPA in detail and concluded that
none of its provisions addressed or precluded the arbitration of a breach of
the transfer agreement.  See In re
Rapid Settlements, 202 S.W.3d at 460. 
Specifically, the court reasoned that 

[n]one
of the court findings required by section 141.004 prohibits the creation of
arbitration rights in a transfer agreement . . . .  Moreover, the SSPA does not explicitly address
the issue of arbitrability of structured settlement transfer contracts.  Nothing in the statute prohibits parties from
including an arbitration provision in the transfer agreement. . . .  Section 141.004 of the SSPA requires prior
court approval of the transfer agreement, not the arbitration clause. . . .

 

Id.  Finding no conflict between the
FAA and the SSPA, the court held the FAA did not preempt SSPA.  Id.  We agree with the analysis and holding of the
Beaumont court.  The FAA does not preempt
the SSPA.

            Having addressed Rapid’s preliminary issues, we now
consider whether Symetra made the required showing to support the trial court’s
order granting the temporary injunction.

 

Temporary Injunctions

            An applicant for a temporary injunction must plead and
prove (1) a cause of action against the defendant, (2) a probable right to
recovery, and (3) a probable, imminent, and irreparable injury in the
interim.  See Butnaru v.
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  A “probable right to recovery” requires only
that the appellee show “that a bona fide issue exists as to his right to
ultimate relief.”  183/620 Group
Joint Venture v. SPF Joint Venture, 765 S.W.2d 901, 904 (Tex. App.–Austin
1989, writ dism’d w.o.j.).  

Standard of Review

            The decision to grant or deny a temporary
writ of injunction lies within the sound discretion of the trial court, and the
court’s grant or denial is subject to reversal only for a clear abuse of
discretion.  Walling v. Metcalfe,
863 S.W.2d 56, 58 (Tex. 1993).  In
reviewing a decision to grant or deny a request for a temporary injunction, an
appellate court views “the evidence in the light most favorable to the trial
court’s order, indulging every reasonable inference in its favor, and
determine[s] whether the order was so arbitrary that it exceeds the bounds of
reasonable discretion.”  IAC, Ltd.
v. Bell Helicopter Textron, Inc., 160 S.W.3d 191, 196 (Tex. App.–Fort
Worth 2005, no pet.).  A trial court does
not abuse its discretion in determining whether to issue a temporary injunction
where there is “some evidence to support the trial court’s decision.”  Id. The standard of appellate
review does not change merely because the injunction precludes a party from
proceeding in another lawsuit.  Forum
Ins. Co. v. Bristol-Myers Squibb Co., 929 S.W.2d 114, 117 (Tex. App.–Beaumont
1996, writ denied).

 

Arbitration

            “A nonsignatory cannot be bound to arbitrate unless it is
bound ‘under traditional principles of contract and agency law’ to be akin to a
signatory of the underlying agreement.”  E.I.
Dupont de Nemours & Co., v. Rhone Poulene Fiber & Resin Intermediates,
S.A.S., 269 F. 3d 187, 194 (3d Cir. 2001).  For example, courts have been willing to
apply third party beneficiary law to bind nonsignatories.  Id. at 194-95.  Courts have also used the following theories
to bind nonsignatories to arbitration agreements: 1) incorporation by
reference, 2) assumption, 3) agency, 4) veil piercing/alter ego, and 5)
estoppel.  Trippe Mfg. Co. v. Niles
Audio Corp., 401 F. 3d 529, 532 (3d Cir. 2005).  Whether the dispute in question falls within
the scope of the arbitration agreement and whether a statute or policy renders
a claim nonarbitrable are generally threshold questions for a court to
decide.  See e.g. Will-Drill Res.,
Inc. v. Samson Res. Co., 352 F. 3d 211, 214 (5th Cir. 2003).

            An award resulting from the arbitration agreement of the
parties to a dispute shall be confirmed by the court unless the narrow grounds
for vacating or modifying it are met.  See
9 U.S.C.A. §§ 9, 10, 11; see also Tex.
Civ. Prac. & Rem. Code §§ 171.087, 171.088, 171.091 (Vernon
2005).  The failure of an arbitrator to
correctly apply the law is not a basis for setting aside an arbitrator’s
award.  Kergosien v. Ocean Energy,
Inc., 390 F. 3d 346, 356 (5th Cir. 2004).  Courts are not authorized to review the
arbitrator’s decision on the merits despite allegations that the decision rests
on factual errors or misinterprets the parties’ agreement.  Major League Baseball Players Ass’n. v.
Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740
(2001).  Even if the court is convinced
that the arbitrator committed serious error, that will not suffice to overturn
his decision.  Id.  The narrowness of judicial review of
arbitration awards is described as “among the narrowest known to the law.”  ARW Exploration Corp. v. Aquirre,
43 F. 3d 1455, 1462 (10th Cir. 1995).

 

The Texas Structured Settlement Protection Act

            The increasing use of negotiated structured settlements
in personal injury cases gave rise to a secondary market for the right to
receive the former tort claimant’s future periodic payments.  In this market, the payees who are receiving
structured settlement payments transfer some or all of their right to receive
future payments to a “factoring company” for a discounted present lump sum
payment.  The disparity in information,
resources, and sophistication between the factoring companies and the former
tort claimant payees too often resulted in the payees, without good reason or
sufficient regard for their future needs, exchanging a future income stream on
which they relied for an unfairly small present lump sum payment.  Predatory tactics were sometimes employed by
factoring companies both to induce and effect transfers manifestly unfair to
the payees.  Symetra Life Ins. Co.
v. Rapid Settlements, Ltd., No. H-05-3167, 2007 U.S. Dist. LEXIS 1985,
at *1-2 (S.D. Tex. Jan. 10, 2007).  In
response to these abuses, the Texas Legislature enacted the SSPA.  Tex.
Civ. Prac. & Rem. Code Ann. §§ 141.001–.007.  At least forty-two other states have adopted
similar statutes.  Symetra Life
Ins. Co., 2007 U.S. Dist. LEXIS 1985, at *2.

            The acts typically require advance disclosures to the
payee including the present value of the payments to be transferred and the
applicable federal rate used in calculating the discounted present value.  See Tex.
Civ. Prac. & Rem. Code Ann. § 141.003(3).  Any transfer by the payee must be approved by
the court that approved or authorized the structured settlement, or, if that
court no longer has jurisdiction, by the statutory county court, the statutory
probate court, or a district court located in the county where the payee
resides.  Tex. Civ. Prac. & Rem. Code Ann. §§ 141.004, 141.002(2)
(Vernon 2005).  Section 141.004 reads as
follows:

 

No
direct or indirect transfer of structured settlement payment rights shall be
effective and no structured settlement obligor or annuity issuer shall be
required to make any payment directly or indirectly to any transferee of
structured settlement payment rights unless the transfer has been approved in
advance in a final court order based on express findings by the court that:

 

   (1) the transfer is in the best interest of
the payee, taking into account the welfare and support of the payee’s
dependents;

 

   (2) the payee has been advised in writing by
the transferee to seek independent professional advice regarding the transfer
and has either received the advice or knowingly waived the advice in writing; and

 

   (3) the transfer does not contravene any
applicable statute or an order of any court or other governmental authority.

 

 

Tex.
Civ. Prac. & Rem. Code Ann. § 141.004.

            The SSPA broadly defines transfers.

 

“Transfer”
means any sale, assignment, pledge, hypothecation, or other alienation or
encumbrance of structured settlement payment rights made by a payee for
consideration, except that the term does not include the creation or perfection
of a security interest in structured settlement payment rights under a blanket
security agreement entered into with an insured depository institution, in the
absence of any action to redirect the structured settlement payments to the
insured depository institution, or its agent or successor in interest, or to
enforce the blanket security interest against the structured settlement payment
rights.

 

 

Tex.
Civ. Prac. & Rem. Code Ann. § 141.002(18) (Vernon
2005).  The provisions of the SSPA may
not be waived by the payee.  Tex. Civ. Prac. & Rem. Code Ann. §
141.007(a) (Vernon 2005).

 

Probable Right of Recovery

            A temporary injunction may not issue unless the
petitioner can show a probable right of recovery.  Butnaru, 84 S.W.3d at 204.  This requires that on appeal Symetra show “that
a bona fide issue exists as to its ultimate right to relief.”  183/620 Group Joint Venture,
765 S.W.2d at 904.  

            Rapid argues that the definition of transfer in the SSPA
does not encompass arbitrations and court proceedings.  Therefore, it argues that the SSPA does not
apply to its transaction with Dempsey. 
Rapid maintains that, even if the security interest Dempsey granted in
the rejected transfer agreement is ineffective, it has a separate and
independent claim in arbitration and for garnishment of Dempsey’s monthly
payments based upon Dempsey’s failure to repay the two $1,000.00 promissory
notes.  The second promissory note, which
Dempsey signed two days after the Nacogdoches court denied its approval of the
transfer, contained an arbitration clause and granted Rapid a security interest
in Dempsey’s payments (described by reference to the transfer agreement).  Rapid filed its demand in arbitration less
than thirty days after Dempsey signed the second note and less than thirty days
after the court denied approval of her transfer of the payments.  It claims that its petition in arbitration
was not for transfer of Dempsey’s structured settlement payment rights.  Rapid insists it was simply for breach of
contract and “the garnishment or assignments of her payments only the remedy.”  Rapid maintains the arbitration agreements
contained in both the transfer agreement and the second promissory note are
valid and enforceable.  According to
Rapid, the petition for confirmation of the arbitrator’s award is the result of
the arbitration and the subsequent arbitration award of Dempsey’s breach of
contract.  The matters are separate and
distinct. Therefore, it was inappropriate for the Nacogdoches court to enjoin
the Harris County court from proceeding to confirm the award properly before it
and outside the jurisdiction of the Nacogdoches County court.  

            Without the Nacogdoches court’s injunction, the
confirmation of the arbitrator’s award would have been almost a foregone
conclusion.  Once confirmed, it would
have been nearly impervious to judicial review despite the arbitrator’s errors
of fact, or misapplication of the law. 
If Rapid’s position is correct, the SSPA provides little or no
protection for the payee against the predatory factoring company.  It need only include an arbitration clause
and a grant of a security interest in the payments in its form transfer
agreement.  If the required approval is
rejected by the court designated in the SSPA, it may, upon the flimsiest of
pretexts, proceed to successfully relitigate the matter to an “agreed award”
before its arbitrator, confident that there can be almost no review of the
merits of the arbitrator’s award, his mistakes of fact, or his misapplication
of the law.

            We are not persuaded that the provisions of the SSPA can
be so easily circumvented or its purpose frustrated by so transparent a
stratagem.  True, there is no prohibition
of an arbitration provision in a transfer agreement.  But the scope of an arbitration agreement and
the arbitrability of the dispute in question are for a court to decide.  Will-Drill Res., Inc., 352 F.3d
at 214.  And its scope cannot extend to
what the law forbids.  The scope of an
arbitration agreement cannot comprehend an agreement to arbitrate to an award
the substantive law clearly prohibits – in this instance, a transfer of
structured settlement payment rights without court approval.  The SSPA and the policy underlying it render
Rapid’s claim nonarbitrable. 

            The creation of a security interest in structured
settlement payments that was attempted in this case is clearly a transfer as
defined by section 141.002(18) of the SSPA. 
The transfer cannot be effective without final approval by the
Nacogdoches court based on express findings. 
The transfer agreement between Dempsey and Rapid recites that Dempsey “grants,
assigns, conveys, mortgages, pledges, hypothecates and transfers” a security
interest in all the assigned payments “regardless of whether such transfer and
assignment is consummated.”  The transfer
agreement containing this proviso was expressly rejected by the court.  Two days after the court’s rejection of the
transfer agreement, Dempsey signed a $1,000.00 note containing an arbitration
clause and reciting that payment was secured by the security interest in the
transfer agreement.  It was on this
security agreement that the arbitrator relied to garnish Dempsey’s structured
settlement payment rights and transfer them to Rapid, effecting the identical
transfer rejected three months earlier by the proper court as against Dempsey’s
best interest.  

            “Obtaining confirmation of an arbitration award in state
court clearly does not equate to the statutorily required court approval of the
transfer.”  Symetra Life Insurance
Co., 2007 U.S. Dist. LEXIS 1985, at *67.  An arbitration award and final judgment
confirming that award cannot substitute for the court approval of a transfer
required by the SSPA.  Neither the
security interest granted in the transfer agreement or in the note were
effective without the approval of the court designated by statute.  Rapid’s attempt to effect a transfer in
defiance of the order of the Nacogdoches court constituted a violation of the
substantive law, which the court had the duty to enjoin.[3]








            The legality of Rapid’s scheme of using arbitration to
effect a transfer of structured settlement payments without approval by the
proper court has been litigated in other forums.  In Symetra Life Insurance Co.,
2007 U.S. Dist. LEXIS 1985 and Allstate Settlement Corp. v. Rapid
Settlements, Ltd., No. 06-4989, 
2007 U.S. Dist. LEXIS 34136 (E.D. Pa. May 8, 2007), Rapid argued, as it
does here, that the damages it sought in arbitration were for breach of
contract and the arbitration’s purpose was not to accomplish the transfer.  As in this case, Rapid insisted that an
appropriate remedy for the breach of contract includes a garnishment or
turnover of an annuitant’s periodic payments or their assignment.  But the arbitrator’s award effectuated the
exact transfer denied by the statutorily mandated court.  In Allstate, the court held
that the findings and orders of the arbitrator were “outside of his powers and
cannot be enforced against Allstate [the annuity issuer] because they ignore
the [Pennsylvania] Protection Act’s court approval requirement that must be
satisfied before any transfer of structured settlement payments are paid.”  Allstate Settlement Corp., 2007
U.S. Dist. LEXIS 34136, at *18.  In Symetra
Life Ins. Co., 2007 U.S. Dist. LEXIS 1985, the court concluded that “by
using arbitration and subsequent state-court confirmation proceedings to effect
the transfer to Rapid Settlements of Symetra annuitants’ future-payment rights,
in the absence of state-court approvals under applicable state structured
settlement protection acts, Rapid Settlements is violating those acts.” Id.,
at *68–69.  The Fourteenth Court of
Appeals recently held in a case involving a Georgia annuitant that “Rapid
cannot accomplish in arbitration that which a Georgia court has already refused
to allow as contrary to Mr. King’s best interests.”  In Re Rapid Settlements, Ltd.,
No. 14-06-00698-CV, 2007 Tex. App. LEXIS 239911, at *11 (Tex. App.–Houston
[14th Dist.] Mar. 29, 2007, orig. proceeding). 

            The arbitration award requires Symetra to pay Dempsey’s
payments to Rapid.  Symetra was not a
party to the transfer agreement or the note. 
It did not participate in the arbitration proceeding.  None of the theories traditionally used to
bind nonsignatories to arbitration agreements are applicable here.  Moreover, the arbitrator’s award is in direct
conflict with the SSPA, which provides that “no structured settlement obligor
or annuity issuer shall be required to make any payment directly or indirectly
to any transferee of structured settlement payment rights unless the transfer
has been approved in advance in a final court order.”  See Tex.
Civ. Prac. & Rem. Code Ann. § 141.004.  Therefore, Symetra has demonstrated that it
is not bound by the arbitrator’s award. 
This shows Symetra’s probable right to recovery.  

 

Probable Irreparable Injury








            The trial court stated that without injunctive relief,
Rapid would seek confirmation of the arbitration award in the Harris County
court causing Symetra irreparable harm by forcing it to litigate in an improper
forum and to incur unnecessary attorney’s fees. 
We agree.  Moreover, Dempsey
cannot waive the provisions of the SSPA. 
Tex. Civ. Prac. & Rem. Code
Ann. § 141.007(a).  If Rapid
proceeded to obtain confirmation of the arbitrator’s award in Harris county,
Symetra would be exposed to the risk of being required to pay Rapid based on
the arbitration award, while remaining liable to pay Dempsey because the
transfer was not approved as required by the SSPA.  The alternative of compliance with the
arbitration award or the requirements of the statute would expose Symetra “to
significant uncertainty as to whom it must pay and a significant risk of double
liability.”  Symetra Life Ins. Co.,
2007 U.S. Dist. LEXIS 1985,  at 104.  This is sufficient to show Symetra’s probable
irreparable injury.

 

Conclusion

            The trial court had jurisdiction to issue the temporary
injunction, and an anti-suit injunction was warranted to protect its
jurisdiction and to prevent a violation of the law.  The Federal Arbitration Act does not preempt
the Texas Structured Settlement Protection Act. 
Symetra has demonstrated a probable right of recovery.  Symetra has also shown that without
injunctive relief it would suffer probable irreparable injury.

            The trial court did not abuse its discretion in issuing
the temporary injunction.  The order is affirmed.

 

                                                                                                     BILL BASS    

                                                                                                            Justice

 

Opinion
delivered August 31, 2007.

Panel
consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court
of Appeals, Tyler, sitting by assignment.

 

 

 

 

 

 

(PUBLISH)

 











[1] Texas
Civil Practice and Remedies Code section 141.003 mandates that the transferee
provide the payee a disclosure statement that states “the discounted present
value of the payments to be transferred, which shall be identified as the ‘calculation
of current value of the transferred structured settlement payments under
federal standards for valuing annuities,’ and the amount of the Applicable
Federal Rate used in calculating the discounted present value; . . .”  Tex.
Civ. Prac. & Rem. Code Ann. §
141.003(3) (Vernon 2005).





[2] On June 2, 2005, Dempsey had signed
another note for $1,000.00 payable to Rapid secured by the Transfer
Agreement.  This note did not provide for
arbitration.





[3]  “The laws in support of a general public
policy and in enforcement of public morality cannot be set aside by
arbitration, and neither will persons with a claim forbidden by laws be
permitted to enforce it through the transforming process of arbitration.”  Smith v. Gladney, 128 Tex. 354,
98 S.W.2d 351, 352 (1936).  The mere
submission of an illegal matter to arbitrators and reducing to an award does
not purge it of its illegality.  Id.,
128 Tex. at 356, 98 S.W.2d at 352.